Arlie Glen SKELTON, et al., on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

GENERAL MOTORS CORPORATION, Defendant–Appellee.

APPEALS OF SACHNOFF, WEAVER & RUBENSTEIN, LTD. and Law Offices of Beverly C. Moore, Jr.

Nos. 87–1404, 87–1530 and 87–1610.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1988.

Decided Oct. 14, 1988.

Rehearings and Rehearings En Banc Denied Jan. 13, 1989.

Lowell E. Sachnoff, Sachnoff Weaver & Rubenstein, Ltd., Chicago, Ill., Michael P. Malakoff, Berger Kapetan Malakoff & Meyers, Pittsburg, Pa., for plaintiffs-appellants.

William R. Jentes, Kirkland & Ellis, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUDAHY and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

This case arises out of a series of class actions brought against General Motors Corporation ("GM") for allegedly substituting less efficient engines and various other automotive parts (including transmissions) into certain lines of GM automobiles. The suits, brought in Illinois, New York and Washington, D.C., culminated when the consolidated class filed a complaint against GM in 1982 (for substituting less efficient transmissions in several lines of GM automobiles), under the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301–2312 (the "Magnuson–Moss Act"). The plaintiffs successfully petitioned the court for class certification and then settled with GM in 1985. Pursuant to the settlement, GM agreed to establish a $17 million fund to be distributed among the plaintiffs whose cars were affected by the substitution. As part of the settlement, the plaintiffs agreed that the fund would be the sole source of their attorneys' fees and that the fees would be calculated on an hourly rather than on a percentage-of-the-fund basis.

Class counsel submitted fee petitions based on the hours they expended multiplied by their hourly rate of payment. Counsel also requested a 75% enhancement of their fee awards to compensate for the risks undertaken in commencing this litigation. In denying the enhancement, the district court reasoned that the determination of a fee award under common fund principles is not significantly different than under a statutory fee-shifting provision. Thus, the district court held that the fee-shifting provision of the Magnuson–Moss Act is relevant to the award of fees in this case and that, under that provision, counsel are not entitled to an upward multiplier. The court alternatively concluded that,

even if the Magnuson–Moss Act does not preclude the award of a multiplier, plaintiffs' counsel in this case are not entitled to a risk multiplier because the litigation never progressed beyond class certification.

## I.

The issue presented by this case is whether the principles governing the shifting of attorneys' fees as between a plaintiff and a defendant are equally applicable to the division of a common fund recovery between a plaintiff class and its attorneys. The district court reasoned

> that the standards for determining reasonable attorneys fees in common fund cases and statutory fee cases should not be significantly different. In the court's view, the use of statutory fee guidelines is especially relevant where the litigation is commenced and prosecuted under a federal statute which specifically provides for an award of attorneys' fees.

*Skelton v. General Motors Corp.,* 661 F.Supp. 1368, 1375–76 (N.D.Ill.1987) (footnote omitted). But there are a number of reasons, based on the development of the respective doctrines and on the logic of the two problems, why these questions must be viewed separately. The factors which separate them are much more significant than those that link them.

Traditionally in the United States, parties to a lawsuit bear their own expenses. Thus, each litigant must pay its own attorney's fees without regard to the outcome of the litigation. This has become known as the "American Rule." By contrast, for centuries British statutory authority has allowed an award of fees and costs to the prevailing party. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247–64, 95 S.Ct. 1612, 1616–25, 44 L.Ed.2d 141 (1975) (thoroughly discussing the history and present status of attorney fee awards). The American Rule continues to govern most of the cases in this country. However, there are many cases where the court may determine not only the amount of fees but which party shall pay them, based on statutory requirements or equitable doctrines. In some of these cases

the court's determination may take the place of, supersede or modify fee agreements between a party and its counsel.

For example, Congress has created exceptions to the American Rule by inserting fee-shifting provisions in certain statutes. *See, e.g.,* 15 U.S.C. §§ 78i(e), 78r(a) (Securities Exchange Act of 1934); 15 U.S.C. § 1640(a) (Truth in Lending Act); 15 U.S.C. § 2310(d)(2) (Magnuson–Moss Act); 42 U.S.C. § 7604(d) (Clean Air Act); 42 U.S.C. § 2000a–3(b) (Civil Rights Act of 1964, Title II); 42 U.S.C. § 2000e–5(k) (Civil Rights Act of 1964, Title VII); 42 U.S.C. § 3612(c) (Fair Housing Act). Thus, a plaintiff that prevails in an action brought under a statute with a fee-shifting provision recovers the amount of its attorney's fee from the defendant.

In contrast, when a case results in the creation of a common fund for the benefit of a plaintiff class, a court will exercise its equitable powers to award plaintiffs' attorneys' fees out of the fund. *Alyeska,* 421 U.S. at 257–58, 95 S.Ct. at 1621–22. In this type of case, the defendant deposits a specified amount with the court for the benefit of the class in exchange for release of its liability. The attorneys' fee award is then taken as a share of the fund, thereby diminishing the sum ultimately retained by the plaintiff class. Similar to the way a plaintiff's attorney may be compensated by a contingent fee, a plaintiff class pays its attorneys by sharing its recovery with them.

Because there is a difference between statutory fee-shifting cases and common fund cases with respect, *inter alia,* to who bears the direct burden of compensating plaintiffs' attorneys, different policies may govern the two types of cases. The common fund doctrine (also known as the "equitable fund" doctrine and the "fund-in-court" doctrine) is "based on the equitable notion that those who have benefited from litigation should share its costs." Report of the Third Circuit Task Force, Court Awarded Attorney Fees 14 (Oct. 8, 1985), *reprinted in* Appendix of Appellants at 435, 453; *see Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62

L.Ed.2d 676 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Insurance Co. of N. America v. Norton,* 716 F.2d 1112, 1115–16 (7th Cir.1983). Statutory fee-shifting provisions, in contrast, reflect the intent of Congress "to encourage private enforcement of the statutory substantive rights, be they economic or noneconomic, through the judicial process." Report of the Third Circuit Task Force, Court Awarded Attorney Fees 15 (Oct. 8, 1985), *reprinted in* Appendix of Appellants at 454. Defendants who have violated plaintiffs' rights may be required to compensate plaintiffs for the costs incurred in enforcing those rights. Thus, in statutory fee-shifting cases, only parties (usually plaintiffs) may seek reimbursement whereas in common fund cases *attorneys* may seek compensation.

Another difference between the two types of court-awarded fee arrangements concerns the role of the plaintiffs' attorneys. In common fund cases, once the attorneys secure a settlement for the class, they petition the court for compensation from the same fund. Thus, their "role changes from one of a fiduciary for the clients to that of a claimant against the fund created for the clients' benefit." *Id.* at 20, *reprinted in* Appendix of Appellants at 459. The court becomes the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications. *See In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 583 (3d Cir.1984) (fee requests from common fund are subject to "heightened judicial scrutiny"). Because statutory fee cases involve the plaintiff (not his attorney) as claimant and continue to be adversary proceedings, these concerns do not arise in the same way.

The district court in this case reasoned, however, that "regardless of any theoretical distinctions between common fund and statutory fee cases, the courts in this circuit employ the same general standards to calculate attorneys fees in both types of cases." *Skelton,* 661 F.Supp. at 1376. To

the extent that, in this circuit, both fee arrangements generally require the court to employ the lodestar approach, this observation is correct. *See, e.g., Gekas v. Attorney Registration & Disciplinary Comm'n,* 793 F.2d 846 (7th Cir.1986) (statutory fee case); *In re Folding Carton Antitrust Litigation,* 84 F.R.D. 245 (N.D. Ill.1979). However, when a court must decide whether to compensate attorneys for the risks they incurred in undertaking the litigation, the difference between fee-shifting and common fund arrangements is quite significant.

Panels of this court—as well as commentators and other courts—have expressed the concern that awarding risk multipliers to prevailing plaintiffs in statutory fee cases may inequitably burden defendants. For example, risk multipliers tend to penalize the parties with the strongest defenses. The stronger the defense, the higher the risk involved in bringing the suit and the greater the multiplier necessary to compensate plaintiff's attorney for bringing the action. Thus, defendants with better cases pay higher plaintiff's attorney fees. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* — U.S. —, 107 S.Ct. 3078, 3083, 3085, 97 L.Ed.2d 585 (1987); *Kirchoff v. Flynn,* 786 F.2d 320, 326 (7th Cir.1986) ("One common concern with compensation for risk is that the multiplier should rise as the probability of success falls, soaking the unlucky defendant who had a good case (more than a 50% chance of prevailing) but lost anyway and therefore faced a huge multiplier."); *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 26 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985); Leubsdorf, *The Contingency Factor in Attorney Fee Awards,* 90 Yale L.J. 473, 488–89 (1981). This consideration does not directly apply in a common fund case. A risk multiplier will not penalize a defendant with a strong defense since the plaintiff class (not the defendant) is responsible for compensating its attorney by sharing its recovery.

Further, assessing risk multipliers against losing defendants in effect requires

these defendants to "subsidize" plaintiffs' lawyers for their unsuccessful lawsuits against other defendants. In statutory fee cases, this is "manifestly inconsistent with Congress' intent to award attorney's fees only to prevailing parties." *Delaware Valley*, 107 S.Ct. at 3083; *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1392 (7th Cir. 1984) ("The fundamental problem of a risk bonus is that it compensates attorneys, indirectly but effectively, for bringing unsuccessful civil rights suits, even though the attorney's fee statute is expressly limited to cases where the party seeking the fee prevails."); *Laffey*, 746 F.2d at 34 n. 138; Leubsdorf, *supra*, at 490. In a common fund case, however, this result cannot directly occur because the specific amount of the fee is charged against the plaintiffs, not the defendant; the defendant's liability is limited to the amount of the common fund, which is available to provide attorneys' fees.[1]

Therefore, the arguments—equitable and statutory—against risk multipliers in statutory fee cases have much less application in common fund cases.[2] This may be the reason that courts awarding fees in common fund cases generally do not express the same reluctance to compensate attorneys for the risk of nonpayment.

Although the Supreme Court has recently rejected the position that risk multipliers are prohibited in statutory fee cases, it has set forth stringent requirements for awarding them. *Delaware Valley*, 107 S.Ct. at 3090–91 (O'Connor, J., concurring in part and concurring in the judgment);[3] *see infra*, p. 257. In a common fund case, where there is no direct or immediate danger of unduly burdening the defendant, a court has more latitude in exercising its equitable powers to determine whether the plaintiff class should compensate its attorneys for their risk of nonpayment. And it remains arguable that, at least in the common fund context, attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.

Thus, when a case is initiated under a statute with a fee-shifting provision and is settled with the creation of a common fund, the question may arise whether statutory fee principles should govern in whole or in part the attorney fee award. The district court in this case concluded that the fee-shifting provision of the Magnuson–Moss Act should have a significant impact on the determination of the fees awarded in this common fund case. *Skelton*, 661 F.Supp. at 1389. In the same vein, GM argues that because the plaintiffs sought relief under

---

**1.** GM argues that the settlement agreement's reverter clause ("Any portion of the settlement fund or accrued interest remaining after the distributions ... shall revert to General Motors." Settlement Agreement ¶ 25) distinguishes this case from the typical common fund case. We disagree. In all common fund cases, the defendant has at least "a colorable claim" to any unclaimed monies. *See Boeing v. Van Gemert*, 444 U.S. 472, 481 & n. 7, 100 S.Ct. 745, 751 & n. 7, 62 L.Ed.2d 676 (1980). The significant feature that distinguishes common fund cases from statutory fee cases is that, in the former, defendants' potential liability has been limited.

**2.** This circuit has also mentioned that risk multipliers provide "an incentive to pursue unmeritorious litigation." *Hagge v. Bauer*, 827 F.2d 101, 111 (7th Cir.1987); *see also McKinnon v. City of Berwyn*, 750 F.2d 1383, 1392 (7th Cir. 1984).

**3.** Justice O'Connor agreed with part of the reasoning of the four-vote plurality and with some of the arguments offered by the four-vote dissent. Her position on risk multipliers thus rep-

resents the position of a majority of the Court. Justice O'Connor agreed with the plurality that "no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, — U.S. —, 107 S.Ct. 3078, 3091, 97 L.Ed.2d 585 (1987) (O'Connor, J., concurring in part and concurring in the judgment) (quoting the plurality opinion, 107 S.Ct. at 3089). Justice O'Connor also observed that " 'legal' risks or risks peculiar to the case" are not sufficient to warrant an enhancement of the lodestar. *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984)). Thus, Justice O'Connor agreed with the dissent that "compensation for contingency must be based on the difference of contingent fee cases *as a class*, rather than on an assessment of the 'riskiness' of any particular case." *Id.*, 107 S.Ct. at 3089.

the Magnuson–Moss Act, its fee-shifting provision should control the award of their attorneys' fees. These conclusions are incorrect and insupportable. Neither the Magnuson–Moss Act itself nor cases involving common funds and other fee-shifting statutes lead us to conclude that the fee-shifting provision of the Magnuson–Moss Act should affect the fee determination in this case, which was settled, resulting in a common fund.[4]

■ When a case results in a common fund, courts generally follow the "equitable fund doctrine" in determining the attorney fee award. *See Van Gemert,* 444 U.S. at 478, 100 S.Ct. at 749 ("The common fund doctrine reflects the traditional practice in courts of equity."); F. MacKinnon, *Contingent Fees for Legal Services* 148 (1964) ("payment of fees by the court from a common fund is standard practice in all jurisdictions"). In current practice, the court exercises its equitable powers by first calculating the lodestar, taking into consideration number of hours and how they were spent and the "value of each attorney's services to the class." *In re Fine Paper,* 751 F.2d at 583. Next, the court may adjust the lodestar to reflect the "contingent nature of the attorney's undertaking."[5] *Id.* This requires the court to assess the "likelihood of success in obtaining a judgment or settlement," as measured at the time the attorney began work

on the case. *Id.* Thus, where appropriate, equitable fund principles allow for an upward adjustment of the lodestar.

Even in cases initiated under statutes containing fee-shifting provisions, other circuits have applied common fund principles to determine attorneys' fees when resolution of disputes results in the creation of common funds. *See, e.g., In re Fine Paper,* 751 F.2d 502; *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974). The Second Circuit, in an antitrust class action that resulted in a $10 million settlement explained that it must use common fund principles to determine attorneys' fees because

> the Clayton Act, which provides for the award of attorneys' fees in civil antitrust suits generally, does not authorize award of attorneys' fees to a plaintiff who does not recover a judgment or who settles his claim with the defendant.... The only basis for awarding an attorney's fees in such cases is the equitable fund theory doctrine....

*Id.* at 468–69 (citations omitted). Recognizing that this doctrine is a part of the federal court's equity jurisdiction, the Second Circuit described its underlying rationale as follows:

> Under this theory claims may be filed not only by a party to the litigation, but also by an attorney whose actions conferred a

---

4. The Third Circuit Task Force concluded that: The traditional common-fund case *and those statutory fee cases that are likely to result in a settlement from which adequate counsel fees can be paid,* should be treated differently than the more typical statutory fee case involving the declaration or enforcement of rights or relatively modest sums of money.
Report of the Third Circuit Task Force, Court Awarded Attorney Fees 21 (Oct. 8, 1985), *reprinted in* Appendix of Appellants at 435, 460 (emphasis added). The Task Force ultimately recommended that whenever a settlement fund is created, attorneys' fees should be awarded on a percentage, rather than on an hourly basis. *Id.* Although there are certainly grounds for believing that a percentage fee arrangement would be more efficient than the current approach (of calculating a lodestar and then determining an enhancer, where appropriate), we will not overturn what seems to have become the accepted method of determining fees in this circuit.

5. The Third Circuit also allows an upward adjustment of the lodestar to compensate attorneys for the delay in payment, when litigation extends over several years, and for the quality of the representation. *In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 583–84 (3d Cir.1984). Whether the lodestar should be adjusted to account for any of these factors is not at issue in this case. In any event, a multiplier may not be the best method for compensating attorneys for the superior quality of their work. This should be reflected in the lodestar in the form of a high hourly rate. Delay in payment may be compensated in either of two ways: (1) by using the attorneys' current rates (as the district court did here); or (2) by using historical rates plus a prime rate enhancement. The courts in this circuit generally use current rates. *See Skelton v. General Motors Corp.,* 661 F.Supp. 1368, 1382 & n. 18 (N.D.Ill.1987).

benefit upon a given group or class of litigants. The underlying principle here is that the members of the group should pay "compensation as was reasonable" above and beyond reimbursement for out-of-pocket expense to the attorney representing their interests. *Id.* at 469.

■ The Third Circuit more recently explained its position in a similar case. *In re Fine Paper* involved a class action brought under the Clayton Act, 15 U.S.C. §§ 15, 26, to enforce the Sherman Act, 15 U.S.C. § 1. The lawsuit was settled and the defendant created a fund "in exchange for [its] release ... from liability both for damages and for statutorily authorized fees." 751 F.2d at 582. The Third Circuit noted that in settling class actions brought under statutes containing fee-shifting provisions, there are two approaches for awarding plaintiffs' attorneys' fees. A court might take the position that damages to the class must be settled separately. Once a fund is created to compensate the plaintiff class for its damages, the court can "either entertain litigation or consider a separate settlement of the defendant['s] liability for statutory fees." *Id.* at 582. Alternatively, the court may allow a single settlement that releases the defendant from both damage and statutory fee liability. The district court in the present case opted for the latter approach. Although this approach creates a potential conflict of interest between class counsel and class members, who are now competing for the same money, it has the possible advantage of facilitating the settlement of class actions. *Id.* at 582–83. The Third Circuit described this second approach as the "conversion" of a statutory fee case into a common fund case. *Id.* at 583. Regardless whether we choose to adopt the "conversion" characterization, it is clear that, when a settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees, equitable fund principles must govern the court's award of the attorneys' fees. *See id.* at 582–84; *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 164–65 (3d Cir.1973).

■ Moreover, looking specifically at the Magnuson–Moss Act, the fee-shifting provision, by its terms, does not purport to apply to a fee determination in a case settled in a common fund. The provision provides for the award of attorney's fees as part of the *judgment* if the consumer "finally prevails" in an action brought under the statute.[6] 15 U.S.C. § 2310(d)(2). Nor is there any evidence in the legislative history of Congress' intent to apply the fee-shifting provision to common fund or settlement cases of any kind.[7]

Even in cases in which the Magnuson–Moss Act is applicable to the fee award (as it would have been had the plaintiff class won a judgment against GM), the fee-shifting provision does not prevent the court

---

6. Section 2310(d)(2) provides:

If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such award of attorneys' fees would be inappropriate.

15 U.S.C. § 2310(d)(2).

7. With respect to the fee-shifting provision of the Magnuson–Moss Act, Congress made only the following remarks:

Subsection (c) of section 110 provides for the recovery of court costs and reasonable attorney's fees in the event a "purchaser," as defined in Title I, is successful in a suit for breach of an express or implied warranty or service contract obligation. This provision would make it economically feasible for consumers to pursue their remedies in state courts. It should be noted that an attorney's fee is to be based upon actual time expended rather than being tied to any percentage of the recovery. This requirement is designed to make it economically feasible to pursue consumer rights involving inexpensive consumer products. Of course where small claims courts are available, the Committee encourages their use; and to the extent legal representation is not necessary in such courts, attorney's fees would probably not be available. S.Rep. No. 986, 92d Cong., 1st Sess. 21, 117 Cong.Rec. 39614 (1971).

from awarding risk multipliers.[8] The district court recognized that this circuit has in recent years disfavored awarding fee enhancers in statutory fee cases.[9] As we noted above, however, the Supreme Court has since squarely addressed this issue. In *Delaware Valley*, a group of citizens had prevailed in an action under the Clean Air Act, 42 U.S.C. § 7410. Fees were awarded to the plaintiffs (not directly to their attorneys) under the fee-shifting provision of the Act, *id.* § 7604(d). The defendant appealed the district court's enhancement of the fee award to compensate the plaintiffs' attorneys for assuming the risk of loss through nonpayment. Justice O'Connor, casting the deciding vote, agreed with the plurality that the circumstances of *Delaware Valley* did not warrant the award of a risk multiplier. She agreed with the dissent, however, "that Congress did not intend to foreclose consideration of contingency in setting a reasonable fee under fee-shifting provisions." 107 S.Ct. at 3089 (O'Connor, J., concurring in part and concurring in judgment).

■ In light of the *Delaware Valley* decision, we cannot adopt the position that risk multipliers are prohibited in all statutory fee-shifting cases. GM contends, however, that the express language of the fee-shifting provision of the Magnuson–Moss Act prevents courts from awarding fee enhancers. This provision provides that attorneys' fees should be "based on actual time expended." 15 U.S.C. § 2310(d)(2). *See supra* note 6. In our view, these words do not preclude a risk multiplier. Instead, they indicate Congress' intent that attorneys' fees be computed on an hourly basis "rather than being tied to any percentage of the recovery." S.Rep. No. 986, 92d Cong., 1st Sess. 21, 117 Cong.Rec.

39614 (1971). *See supra* note 7. Because a risk enhancer is applicable to the lodestar—it multiplies the lodestar by a number representing the probability of loss—it is based on the number of hours the attorneys worked and not the size of plaintiffs' recovery. Thus a risk multiplier is "based on actual time expended."

## II.

Having concluded that plaintiffs' counsel are not precluded from seeking a fee enhancer to compensate for contingency we turn to the question whether under the circumstances of this case they are entitled to the risk multiplier they seek. The district court held that a risk multiplier is unnecessary to fully compensate the attorneys because "the action never proceeded very far beyond the initial pleading stages." *Skelton*, 661 F.Supp. at 1392.

■ The district court's determination of reasonable attorney fees, including its decision whether to award a risk multiplier, generally is reviewed only for abuse of discretion. *See In re Illinois Congressional Districts Reapportionment Cases*, 704 F.2d 380, 382 (7th Cir.1983); *Swanson v. American Consumer Indus., Inc.*, 517 F.2d 555, 562 (7th Cir.1975) ("That abuse of discretion is the general standard for review of trial court awards of attorneys' fees under the 'fund' theory ... is well established."). We will, however, overturn a fee award that is based on an error of law. *Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir.1984); *see also Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1134 (7th Cir.1987).

■ Here the district court erred in basing its denial of a risk multiplier on the fact

---

**8.** As noted above, *see supra* p. 252, statutory fee-shifting provides an award to the *plaintiff.* Arguably at least, the arrangements of the plaintiff with its attorneys may differ.

**9.** To the extent that this circuit has previously taken a position disfavoring risk multipliers in fee-shifting cases, *see, e.g., McKinnon*, 750 F.2d at 1392, we appear to be withdrawing from that position. *See Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir.1986) ("Increasing hourly rates for risk and delay is one way of restoring the hour-

ly rate a lawyer could obtain from a paying client, and a necessary way when the base of the fees must be the hourly rate."); *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 661 (7th Cir.1985) ("We do not mean to imply that a multiplier for the contingent nature of success is inappropriate when lawyers bear the risk of nonpayment and the delay in payment."). *But see Hagge*, 827 F.2d at 111 (risk of loss is not a basis in this circuit for enhancing lodestar; Supreme Court has yet to decide this issue).

258

that the parties settled at a relatively early stage in the litigation. The point at which plaintiffs settle with defendants (or win a judgment against defendants) is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them. *See In re Fine Paper*, 751 F.2d at 583 (risk should be "measured at the point when the attorney's time was committed to the case"). In the present case (as in all similar cases), the early settlement is reflected in the lodestar-plaintiffs' counsel worked fewer hours than they would have if the case had gone to trial.

Because we conclude that early settlement is an insufficient basis for denying a risk multiplier, we remand this case to the district court to consider whether class counsel are entitled to compensation for incurring the risk of nonpayment.

We fully realize the difficulty of this undertaking. The district court must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund. *See* Comment, *Adjusting Attorney Fee Awards Through Multipliers in Antitrust Class Actions*, 21 Hous.L.Rev. 801, 812 (1984). Nevertheless, when attorneys' receipt of payment is contingent on the success of the litigation, reasonable compensation may demand more than the hourly rate multiplied by the hours worked, for that is exactly what the attorneys would have earned from clients who agreed to pay for services regardless of success. Thus, to account for the contingent nature of the compensation, a court should assess the riskiness of litigation. This task is not without its problems. First, it entails a retroactive calculation of the probability of success as measured at the beginning of litigation. Second, it places plaintiffs' lawyers in the unseemly position of convincing the court that their clients' case was weak. For these reasons (and others) it has been suggested that a standard risk multiplier be used in all contingent fee arrangements. *See* Leubsdorf, *supra* p. 253, at 511 (suggesting that "lawyers in successful cases receive a fee twice what they would have

received from clients whose payment is not contingent on success").

Despite the problems related to subjectiveness inherent in the determination of a risk multiplier, the district court, familiar as it is with the nature of the litigation, should retain discretion to decide if and to what extent the plaintiffs' counsel should be compensated for risk. It may be that a doubling of the lodestar would provide a sensible ceiling. It would certainly address the concern that extremely risky cases (those bordering on the frivolous) not warrant extremely large risk multipliers. Since class counsel here have requested an amount less than double their lodestar we need not decide this definitively. Thus, we instruct the district court to examine plaintiffs' attorneys' reasons for asserting that this class action was a risky undertaking and to determine whether these reasons justify the 75% multiplier they seek (or some multiplier less than that).

### III.

One of the plaintiff's attorneys, Beverly C. Moore, Jr., appeals the district court's determination of his lodestar award of $396,813.32. GM argues that the settlement agreement, which the court approved in a separate order on the same day that it awarded Moore's lodestar, precludes Moore from seeking appellate review of the court's determination of his lodestar. We agree with GM.

The settlement agreement creates a $17 million fund, from which compensation for plaintiffs' attorneys must be taken. The agreement contains a section that describes in detail how costs and expenses, including attorney fees, were to have been recovered. This section requires plaintiffs' attorneys to file with the district court a petition for fees and costs incurred in the litigation based on compensation for actual hours spent (the "lodestar") and reimbursement for actual costs and expenses. This section further states that "[b]oth parties agree not to seek appellate review of any determination of the lodestar figure or actual costs and expense." Settlement Agreement ¶ 34, Appendix of Appellants at 102.

In direct contradiction of the Settlement Agreement, Moore makes such an appeal. He contends that because he is not a party to the Settlement Agreement, he is not bound by its terms. His claim is two-fold: first, he never signed the agreement; second, the attorneys are not the "parties" to the agreement. We do not accept either argument.

Although Moore was not a signatory to it, his conduct binds him to the agreement. *See Soelzer v. Soelzer*, 382 Ill. 393, 399, 47 N.E.2d 458, 460 (1943) (acts and conduct of adopting parent validated unsigned adoption contract); *Amelco Elec. Co. v. Arcole Midwest Corp.*, 40 Ill.App.3d 118, 125–26, 351 N.E.2d 349, 354 (1976) (subcontractor who did not sign contract was bound because he did not object to its terms and acted on it).[10] Pursuant to the settlement agreement, Moore, along with the other attorneys, petitioned the district court for their fees and expenses. Moore joined the other attorneys in participating in the October 30, 1986 fairness hearing on the settlement agreement and in the November 10, 1986 hearing on attorneys' fees, which was a continuation of the fairness hearing. Thus, although Moore never signed the agreement, he followed its procedures. Moreover, Moore never filed an objection to the settlement agreement. And, most important, he tried his case and accepted his award. A party may become bound to a contract by accepting its benefits, even though he did not sign it. *Bi–County Properties v. Wampler*, 61 Ill. App.3d 799, 805, 18 Ill.Dec. 847, 378 N.E.2d 311 (1978) ("Conduct, including an acceptance of benefits under a contract, may be sufficient to constitute a ratification binding on the party accepting the benefits as if he had signed the contract."). Clearly, the settlement agreement is a contract. *See Air Line Stewards & Stewardesses Assoc., Local 550 v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir.1983) (a settlement agreement is a "contract and as such the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts

generally"). Moore accepted the benefits of the contract when he cashed his check. He cannot obtain the *quid* of the settlement agreement and avoid the *quo* of foregoing his right to appeal.

We also reject Moore's contention that because the attorneys are not "parties" to the Settlement Agreement, the promise not to seek appellate review does not apply to them. Although the Settlement Agreement defines parties as "plaintiffs and defendant General Motors," Settlement Agreement ¶ 1, Appendix of Appellants at 77, the section governing costs and fees clearly binds the attorneys. Drafted in a less-than-perfect manner, that section uses the term "parties" interchangeably with "plaintiffs' counsel":

> Both *parties* agree not to seek appellate review of any determination of the lodestar figure or actual costs and expenses. Both *parties* reserve the right to seek appellate review of the question whether the Court may grant any multiplier or other enhancement of the lodestar figure.... In the event of an appeal by General Motors or the *plaintiffs' counsel* as to the question whether the Court may grant any multiplier ... *plaintiffs' counsel* may apply to the Court for interim payment of costs and expenses....

*Id.* ¶ 34, Appendix of Appellants at 102 (emphasis added). Our interpretation of this somewhat confusing paragraph is that plaintiffs' counsel and GM have relinquished their right to appeal the lodestar determination. The intent of the language taken in context seems to be to preserve the right of General Motors or of plaintiffs' counsel (the two who apparently had an expressed interest) to challenge on appeal a holding that there could be or that there could not be, respectively, a multiplier. Closely linked with this is a renunciation by all concerned of a right to appeal the lodestar. Perhaps these provisions were tailored primarily to the presumed needs of counsel other than Moore. But Moore has not indicated that he objected specifically to this loss of appeal rights. Through his

---

**10.** The Settlement Agreement provides that Illinois law should govern its construction.

conduct Moore bound himself to this part of the agreement.

Finally, Moore argues that because the district court's fee award is not actually based on the settlement agreement, he retains his right to appeal the award. This case, however, began when the attorneys petitioned for fees and expenses in accordance with the terms of the Settlement Agreement. Even though these terms do not include a specific amount for attorneys' fees, they do provide for the court's determination of attorneys' fees. Thus, without the Settlement Agreement, Moore and the other attorneys would have had no basis for obtaining their fees.

We will not allow Moore to have it both ways. He cannot accept the benefits of the Settlement Agreement and avoid the burden of agreeing not to appeal. Moore has waived his right to appellate review as stated in the Agreement. We thus affirm the district court's determination of Moore's lodestar figure.

## IV.

For all the reasons stated, the district court's attorney fee awards are

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.