EASTERBROOK, Chief Judge.
About 45 days after these appeals had been argued, the appellants asked us to dismiss them, see Fed. R.App. P. 42(b), informing the court that the dispute had been settled. All but one of the appellees (ACE INA Holdings) joined a stipulation of dismissal; ACE did not join it, but neither does it oppose dismissal. Because the litigation is a class action, however, we were concerned that the settlement might have adverse effects on other members of the class. So we asked for additional memoranda. These have been filed, and in the two months that have elapsed since the notice no member of the class has expressed opposition. Having concluded that the settlement does not jeopardize the interests of the unrepresented class members, we dismiss the appeals.
The first sentence of Rule 42(b) provides that, if all parties agree to an appeal’s dismissal, then the clerk of court may close the proceeding without judicial action. ACE did not join the stipulation, so the second sentence of Rule 42(b) applies: “An appeal may be dismissed on the appellant’s motion on terms agreed to by the parties or fixed by the court.” This sentence uses “may” rather than “must” so that the judges can protect the rights of anyone who did not consent to the dismissal. Although the members of the class are not technically parties, they have legally enforceable interests. See Devlin v. Scardelletti, 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002).
Companies underwriting workers’ compensation insurance participate in a reinsurance pool administered by the National Workers Compensation Reinsurance Association (the Association). Insurers share in the pool’s profit or loss according to the volume of business they underwrite. When the pool is profitable, it is beneficial to have a larger book of business; when the pool loses money, a smaller book means that the underwriter needs to contribute less toward the losses. The class in this suit contends that American International Group (AIG) underreported the size of its business in losing years, causing *756 the pool’s other members to bear a disproportionate share of the losses. The class asked for about $3.1 billion.
Some of the insurers had other business dealings. Liberty Mutual and its affiliates, including Safeco, have independent claims against AIG. For its part, AIG advanced claims against Liberty Mutual (as we call the entire group). When Liberty Mutual caused Safeco to commence this class action as the representative plaintiff, these other claims complicated the litigation. Once it became evident that Liberty Mutual had unacceptable conflicts, ACE INA Holdings intervened, with several other insurers, to take over as the class’s representatives. Still, Liberty Mutual sought to use the class suit as a club to induce AIG to pay more on its separate claims against AIG, while AIG sought to minimize the sum of what it paid the class plus what it owed Liberty Mutual separately.
ACE (and the other new representatives, which we ignore from here on) eventually settled the class claims against AIG for $450 million. The settlement includes releases of all claims that pool members held against AIG in all lines of business (not just reinsurance of workers’ compensation policies), plus releases of AIG’s claims against the class’s members. Liberty Mutual protested; it contended that its 22% share of the settlement (some $99 million) is too small, given the value of its independent claims against AIG. The settlement provides that any class member can opt out, and ACE anticipated that Liberty Mutual would do so. The settlement agreement provides that, if Liberty Mutual were to opt out, AIG’s payment would be reduced to $351 million.
Liberty Mutual elected to stay in the class. So did all but one other insurer. The district judge approved the settlement after a hearing under Fed.R.Civ.P. 23(e). 2012 U.S. Dist. LEXIS 25265 (N.D.Ill. Feb. 28, 2012). Liberty Mutual then appealed, arguing in this court that its share of the settlement does not compensate it adequately for the value of its stand-alone claims against AIG. It also contended that the conflicts of interest within the reinsurance pool meant that the case never should have been certified as a class. (This argument appears in Safeco’s brief rather than Liberty Mutual’s, but as they are under joint control the main effect of filing separate briefs is to get extra words. None of the other parties contends that Safeco should be viewed as independent of its parent; after all, this is why Safeco was not a satisfactory class representative.) Appellants made some other arguments, which need not be described. None of the insurers outside the Liberty Mutual group complained about the class certification or the settlement, and the Association, on behalf of the entire pool, supported the district court’s decision.
After argument, Liberty Mutual settled ■with AIG. The terms of the settlement do not matter to the other members of the class, who still split $351 million among them. ACE and the other representatives are content. Neither the Association (which manages the pool) nor any member of the class has protested. It is accordingly hard to see how a live controversy remains, and courts should not issue opinions resolving litigation that the parties no longer want to pursue. Since no one now wants us to adjudicate this dispute — or even suggests that there is a “dispute” left to adjudicate — dismissing the appeals is in order. Cf. U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994).
We have considered, in the spirit of Rule 23(e), whether this settlement has any potential to injure nonparticipants. Yet all of the pool’s members outside the Liberty Mutual group still get exactly what they accepted before — and the district court *757 found that resolution fair. Liberty Mutual’s appeal principally concerns the way the district court’s order affects its own claims against AIG. That’s something Liberty Mutual had every right to resolve independently by opting out. A settlement between Liberty Mutual and AIG while the appeal was pending works as a belated opt-out, which has no greater potential to injure the pool’s other members than an opt-out before the district court acted would have done. If, under the settlement, opt-out by Liberty Mutual meant undoing the pact and continuing the litigation, then a de facto opt-out on appeal might justify a remand. But the possibility of Liberty Mutual opting out and reaching a side deal with AIG was provided for in the settlement itself. That this possibility now has been realized does not call into question the settlement’s fairness to the pool’s other members.
Could Liberty Mutual’s appeal itself have injured other members of the class— perhaps by leading them to think that they needn’t file their own appeals? That is very unlikely, for three reasons.
First, what issues would other class members have raised on appeal? None had complained about the settlement, so there was no adverse decision to appeal from. Second, why would Liberty Mutual’s appeal have dissuaded another insurer from appealing? Any other firm could see that Liberty Mutual was appealing to defend its separate interests; none would have relied on Liberty Mutual. The established conflict between Liberty Mutual and the rest of the class is why ACE intervened to take over as the representative plaintiff. Other members of the class would have seen Liberty Mutual as a threat to their interests, not as a champion they could rely on for protection. Recall that Liberty Mutual asked us to abrogate the class certification, a step that would have eliminated the other insurers’ recoveries.
Third, Liberty Mutual waited until the end of the window for appeal. The judgment was entered on February 28, 2012, and the appeals were filed on March 27. No other insurer could have been safe in waiting to see whether Liberty Mutual would appeal; a pool member that wanted appellate review would have acted on its own before March 27. Liberty Mutual would not have violated any other insurer’s rights by settling with AIG on March 26 and never filing an appeal; filing an appeal at the end of the available time and settling later has no greater potential to injure other members of the class.
Although we appreciate that conflicts of interest between representative plaintiffs and class members can lead the representatives to sell out for too little, no one has accused ACE of yielding to that temptation. All members of the class are large and sophisticated businesses, many with millions on the line and legal staffs to protect their interests. Even the smaller insurers receive more than $100,000 from the settlement, and if the representatives had been able to negotiate for the $3 billion the class initially sought, the average return per insurer would have exceeded $2 million (and about $750,000 apiece for the smaller insurers). The pool is a multi-billion-dollar business; its manager, which looks out for the aggregate of all members’ interests, supports both the original settlement and the dismissal of Liberty Mutual’s appeal. The Manual for Complex Litigation § 21.61 (4th ed. 2004), provides a list of events that may tip off the judiciary to a problem; none of the things to watch for has occurred in this suit.
Because there is no prospect of injury to any other class member, we need not discuss at length this statement in the committee note to the 2003 amendment to *758 Rule 23(e): “Once an objector appeals, control of the proceeding lies in the court of appeals. The court of appeals may undertake review and approval of a settlement with the objector, perhaps as part of appeal settlement procedures, or may remand to the district court to take advantage of the district court’s familiarity with the action and settlement.” The committee note does not discuss any particular language in Rule 23, which like the other civil rules deals with proceedings in district courts rather than courts of appeals. All the committee’s statement does is recognize that the court of appeals will decide what to do. For the reasons we have given, we do not think any further proceedings necessary.
If despite appearances this settlement makes other class members worse off or disappoints their reasonable expectations, a class member could file a motion in the district court under Fed.R.Civ.P. 60(b)(3) (misconduct by an opposing party) or 60(b)(6) (“any other reason that justifies relief’). If such a motion were to be filed, a concrete controversy would call for judicial resolution. At the moment, however, none of the parties wants to fight, and none of the class members has expressed dissatisfaction. Any further proceedings would be gratuitous. The appeals are dismissed.