In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2569

AMERICANA ART CHINA
COMPANY, INC.,

*Plaintiff-Appellant*,

*v.*

FOXFIRE PRINTING AND
PACKAGING, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:08-cv-06992— **Frederick J. Kapala**, *Judge*.

ARGUED NOVEMBER 13, 2013—DECIDED FEBRUARY 18, 2014

Before MANION, KANNE, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*.  Counsel for the plaintiff contests the
district court's reduction of an attorney fee award negotiated

as part of a class action settlement between plaintiff, defendant, and defendant's insurance carrier after defendant admitted to liability for violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. The appeal was uncontested, but plaintiff's counsel must not have been pleased with the tenor of oral argument. Roughly a week after appearing in court, the parties attempted a Rule 42(b) dismissal. We decline to accept the voluntary dismissal, and affirm the district court's fee reduction.

## I. BACKGROUND

This is a "fax-blasting" case. In 2008, the defendant faxed unsolicited advertisements to tens of thousands of recipients in violation of the TCPA. Plaintiff Americana Art China Company, Incorporated, is class representative. In October 2011, the defendant tentatively settled for a judgment against it in the amount of $18 million, provided that its out-of-pocket expenses were limited to $75,000, with the remainder recoverable only from its insurance carriers, Hartford and Continental.

The agreement between Americana and the defendant prompted Continental (but not Hartford) to intervene. In October 2012, a second proposed class action settlement was reached, this time between Americana, the defendant, and Continental. In it, Continental agreed to make a total of $6.1 million available to the class members to resolve its own liability. The total is approximately equal to the number of faxes sent (110,853) times the per-fax damages figure offered by Continental ($55.03). The proposed settlement also allowed

for a fee award to Americana's attorneys of 1/3 the total amount available: $2,033,333.33.[1]

Americana moved the district court for preliminary approval of the settlement, and Hartford intervened. In response, Americana edited some recitals contained within the settlement agreement, but the substance of the terms (and Hartford's unresolved liability) remained unchanged. At this point, the district court preliminarily approved the terms of the settlement and ordered notice sent to the class.

24,389 of the 28,879 class members were successfully notified; five requested exclusion, and none objected. Only 1,820 returned a claim form, however, seeking damages for a total of 7,222 unlawful fax transmissions. That meant Continental would pay out only $397,426.66 of the $6.1 million made available to class members, with the remainder, less attorney fees and incentive awards, to revert.

The district court severed its consideration of the proposed class settlement, to which it gave final approval, from the issue of attorney fees. Despite the relatively meager final payout to class members, Americana's attorneys continued to demand over $2 million. Wary of an inequitable distribution, the district court applied the lodestar method, rather than the percentage method, to determine an appropriate fee award. The court accepted the lodestar amount submitted by counsel, and

---

[1] The subtraction of the fee award from the total amount available would obviously reduce the actual amount recoverable by each class member if all claims were returned, but that is not an uncommon feature in the class action landscape.

applied a risk multiplier of 1.5 to arrive at a final fee award of $1,147,698.70.

Americana's attorneys, who are the real party in interest at this point, took exception to the district court's fee reduction and filed this appeal. Although the appeal was uncontested (it is not clear who, if anybody, *would* contest it, since all active parties other than Hartford signed on to the settlement), counsel experienced a sudden change of heart after oral argument. On November 21, 2013, counsel, along with Continental and the defendant, filed a joint motion to dismiss pursuant to Federal Rule of Appellate Procedure 42(b). We requested a supplement from the parties explaining what, if any, effect their dismissal agreement would have on the terms of the settlement considered by the district court. Counsel responded that the dismissal of this appeal would have no effect; the district court judgment would stand in all respects, and it would be as though the appeal were never brought.

"Rule 42(b) of the appellate rules does not *require* dismissal if the rule's conditions for dismissal are satisfied; it says the court 'may' dismiss if they are." *Safeco Ins. Co. of Am. v. Am. Intern. Grp., Inc.*, 710 F.3d 754, 759 (7th Cir. 2013) (Posner, J., dissenting). Given the conflicting incentives present in any class action suit, judicial review of class action settlements is vital at both the trial and appellate level. *Id*. We believe that it would be irresponsible to dismiss this case without review. Cases like this one are common and are economically significant. This is an opportunity to provide additional guidance to the district courts.

## II. ANALYSIS

We review a district court's fee determination for an abuse of discretion. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991). We will not upset the district court's decision unless it "reaches an erroneous conclusion of law, fails to explain a reduction or reaches a conclusion that no evidence in the record supports as rational." *Id*. As a part of our analysis, we will also "review *de novo* the district court's methodology to determine whether it reflects procedure approved for calculating awards." *Id*.

The district court applied the lodestar method to determine an appropriate fee award in this case, accepting the lodestar amount submitted by counsel and applying a risk multiplier of 1.5 to account for the contingent nature of the recovery. Americana attacks the district court decision in two respects. First, it argues that the district court's application of the lodestar method was erroneous as a matter of law because it involved an *ex post facto*, rather than an *ex ante*, rationalization of the value of counsel's services. Second, it argues that lodestar was the wrong method in the first place, and that the district court should have stuck with the "percentage" method derived from common fund cases. Both arguments are off-base. The district court committed no methodological error and did not abuse its discretion in reducing the fee award.

### A. Lodestar Methodology

Americana's first argument is that, by factoring in the amount actually recovered by the fax-blast victims when calculating an appropriate fee award under the lodestar method, the district court improperly engaged in *ex post facto*

rationalization for a fee reduction. Americana claims, "This Circuit's decisions have repeatedly stated that the process for determining a reasonable attorney fee in a class action requires an *ex ante* analysis[.]" (Appellant's Br. at 11.) That is essentially true. We have said, for example, that "[o]nly *ex ante* can bargaining occur in the shadow of the litigation's uncertainty; only *ex ante* can the costs and benefits of particular systems and risk multipliers be assessed intelligently." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001). The reality, of course, is that fees often are not determined *ex ante*. But because we always seek to replicate the market value of an attorney's services—and because the market would assign value up front—a district court that leaves the matter of fees until the end of the litigation process "must set a fee by approximating the terms that would have been agreed to *ex ante*, had negotiations occurred." *Id.*

That said, Americana's argument is a non-starter. Why? Because the district court did not consider the ultimate outcome *at all* in calculating at a reasonable fee under the lodestar method. It considered only the lodestar amount submitted by counsel and the risk multiplier warranted by the contingent nature of the case. It did consider the paucity of the class recovery as compared to the requested fee award when deciding whether to apply the lodestar method, as opposed to the percentage method, in the first place. But that is exactly what we have suggested a district court *should* do. *See Harman*, 945 F.2d at 974 (explaining that the lodestar method has an advantage over the percentage method in that it alleviates "concerns that a percentage approach resulted in over-compensation for attorneys"). Moreover, the choice of

methods is discretionary. *Id*. at 975 (citing *Kirchoff v. Flynn*, 786 F.2d 320, 329 n. 1 (7th Cir. 1986)). As we will explain hereafter, in our circuit, it is legally correct for a district court to choose either. Doing so is obviously not an abuse of discretion.

We also note that it would not be legal error if the district court *did* consider the actual amount recovered. Attorneys and clients negotiating fee schedules *ex ante* often, and in some practice contexts almost exclusively, consider the litigation's ultimate degree of success. That is how a contingency fee works.  To our knowledge, we have never forbidden district courts from considering the outcome when engaging in a simulated *ex ante* analysis. We have certainly discouraged district courts from relying *solely* on the degree of success in determining fee awards, *see Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007), but not from considering it at all. And, to be frank, if the district court in this case truly had solely considered the ultimate benefit to class members, we doubt very much that it would have awarded roughly seventy-five percent of the final payout to Americana's attorneys, which is the current state of affairs.

*B.   Rejection of Percentage Method*

Americana's alternative argument is essentially that the district court committed legal error by choosing the lodestar method over the percentage method. This argument is contrary to the law of our circuit, which allows for either method. In *Florin v. Nationsbank of Ga., N.A.*, we explained:

> [W]e do not believe that the lodestar approach is so flawed that it should be abandoned. Instead, we are of the opinion that both the lodestar approach and the

> percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances. We therefore restate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court.

34 F.3d 560, 566 (7th Cir. 1994). Whatever position our sister circuits might take, *Florin* is still good law. The district court did not err, much less abuse its discretion, by choosing the lodestar method in this case.

Beyond the foregoing, counsel for Americana advance a few tangentially relevant arguments, which do not require our extended consideration. One concerns the "total benefit rule," under which a court applying the percentage method to a common fund recovery should consider the total benefit *available* to class members (in this case, $6.1 million) rather than the total benefit *paid* (in this case, roughly $400,000) when fixing attorney fees. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Because the district court in this case applied the lodestar method and not the percentage method, the total benefit rule is clearly inapplicable, and we need not reach the issue.

### III.   CONCLUSION

We decline to accept the parties' attempt at voluntary dismissal. The district court committed no abuse of discretion in its selection of the lodestar method in this case, nor any legal error in its application of that method. We AFFIRM.