**Sherry EIRHART, Plaintiff,**

v.

**LIBBEY–OWENS–FORD COMPANY and LOF Glass, Inc., Defendants.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**LIBBEY–OWENS–FORD COMPANY and LOF Glass, Inc., Defendants.**

**Nos. 76 C 3182, 78 C 2042.**

United States District Court, N.D. Illinois, E.D.

Nov. 27, 1989.

Michael H. Woolever, R. Lee Christie, Hopkins & Sutter, Thomas R. Meites, Lynn Sara Frackman, Meites, Frackman & Mulder, Margaret L. Herbert, E.E.O.C., Chicago, Ill., for plaintiff.

Robert Feldgarden, Neil D. Kimmelfield, Lee, Toomey & Kent, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Counsel for the plaintiff class (the "Class") in this long-running class action have moved for an order directing defendants (collectively "LOF") not to file information returns with the Internal Revenue Service ("IRS") reporting, as income taxable to the Class members, LOF's payment in 1988 of attorneys' fees awarded to Class counsel. Both sides have their own special tax counsel, and both sets of counsel have argued that the IRS position on the inclusion of attorneys' fees in the taxable income of members of a benefited class is reflected in Rev.Rul. 80–364, 1980–2 C.B. 294 (the "Ruling"). That Ruling describes several situations in which plaintiffs' attorneys' fees were paid as a result of litigation or settlement and states the IRS stance on whether such fees are includable [1] in plaintiffs' income.

According to the parties, the only question for decision here is whether the situation in the current case is more like that described in Situation 1 or Situation 3 of the Ruling. After taking into consideration the submissions of Class counsel as well as LOF's objections, this Court grants the motion of Class counsel and directs LOF not to file the disputed returns with IRS, but for reasons somewhat different from those urged by Class counsel.

In Situation 1 an individual filed a complaint against a company for back pay on his own behalf and the court awarded him 8x dollars in back pay, 1x dollars in interest and an attorney's fee of 1x dollars. Upon those bare-bones facts IRS held the award of the attorney's fees would be included in the employee's gross income.[2]

In Situation 3 a union filed an action against a company for breach of a collective bargaining agreement. After the union and the company then entered into a settlement agreement that provided for payment to the union of 40x dollars in full settlement of all claims, the union paid 6x dollars to its attorneys for their services and distributed the remaining 34x dollars among the employees for back pay in proportion to the employees' claims. There IRS ruled the amount paid by the union for attorneys' fees was not includable in the gross income of the individual employees. Instead IRS characterized the payment as "a reimbursement for expenses incurred by

---

1. In addition to disagreeing as to the proper substantive course to follow, counsel disagree even over the proper spelling of "includable." While Webster's *Third New International Dictionary* lists both "includable" and "includible," this opinion follows the common convention that the spelling listed first is preferred and will accordingly spell the word with an "a."

2. Although at that time the employee would presumably receive a corresponding deduction in the identical amount for expenses incurred in the production of income, intervening changes in the Code would appear to bar such a wash result as to nearly all (if not all) the Class members here.

the union to enforce the collective bargaining agreement."

Class counsel argue the current case is more like Situation 3 than Situation 1, so that IRS would not view the part of the LOF fund paid out as attorneys' fees as income reportable by the Class members. Their P. Mem. 2–3 characterizes the distinction between Situations 1 and 3 this way:

> In Situation 1, the individual plaintiff obviously incurred a direct obligation to compensate his or her attorney, and derived a direct benefit from the court's order that the attorney's fee be paid by the defendant.... In Situation 3, however, the individual members who shared in the group recovery won by their representative incurred no obligation to compensate the attorneys hired by the representative and, therefore, did not enjoy a comparable direct benefit from having the attorney's fees paid by someone else.

According to Class counsel, the test this Court should use to determine whether or not attorneys' fees would be includable in the income of the Class members is whether the money allocated to attorneys' fees "belonged" to the members of the Class but was paid to discharge an obligation of the Class members to their attorneys. Applying that test, Class counsel urge this Court to find that the funds paid to them did not belong to the members of the Class because (1) no individual Class members incurred a direct obligation to pay the attorneys' fees whether the Class won or lost

the case and (2) the amount belonging to the individuals could be determined only after the attorneys' fees were subtracted from the group-wide award.

LOF suggests the distinction between Situations 1 and 3 stems instead from the status of the union as an intervening entity, and it argues the Class in this case is not an analogous entity.[3] LOF notes that in Situation 1 the plaintiff brought his action on his own account and derived a direct benefit from the payment of his attorneys' fees. He was the party to the lawsuit, and therefore he was reimbursed for the attorneys' fees incurred. In Situation 3, on the other hand, the union apparently brought the action for breach of the collective bargaining agreement on its own behalf and for its own reasons.[4] In the Title VII scheme of 42 U.S.C. § 2000e–5(k) ("Section 2000e–5(k)"), the union was the party whose attorneys' fees were reimbursed, and therefore the union was the entity that should bear the tax burden (if any) resulting from that reimbursement.[5]

This Court does not agree with either side's explanation of the Ruling as dispositive here. Their respective weaknesses may be examined in turn.

First, plaintiffs' argument that the results should differ because the taxpayer in Situation 1 "obviously incurred a direct obligation to compensate his or her attorney" is not borne out by an examination of the Ruling itself. Nowhere does the Ruling

---

**3.** Class counsel seek to counter that attempted distinction by emphasizing Congress' intent to make private litigants in Title VII cases "private attorneys general." Counsel argue that the indirect benefits running to society at large and to other employees potentially facing discriminatory treatment make the Class analogous to the union (see n. 4). But it is not the benefits accruing to society at large that explain Situation 3. After all, society benefits from an individual Title VII action in kind (though not in degree) in the same way it benefits from a class action. Rather, the benefit to the union as an entity in Situation 3 is what shifts the focus from the employees who receive back pay to the union itself. LOF's argument properly raises the issue, then, whether the Class constitutes an intervening entity analogous to the union.

**4.** Unions frequently have reasons to sue employers over and above the pecuniary interests of

their members. While union litigation is often aimed at gaining damages for the membership, unions have an independent interest in ensuring that the employers with whom they bargain adhere to collective bargaining agreements. Successful litigation will benefit the union in its bargaining with other employers, thereby benefiting all union members whether or not they share in the award in a particular case. Indeed, litigation may even provide indirect benefit to non-union employees or members of other unions.

**5.** As it happens, unions are specifically exempted from income tax liability by 26 U.S.C. § 501(c)(5) (all further citations to provisions of the Internal Revenue Code will simply take the form "Section—," a usage that should cause no confusion with this opinion's references to a single Title VII provision, Section 2000e–5(k), with its own unmistakable number).

say either that the individual was so obligated or that the result would be different if, for example, the plaintiff had negotiated a contingency fee arrangement under which he would have no obligation to his attorney unless he was victorious in the case—nor does it say what the result would be if the plaintiff were being represented pro bono and had no obligation even if victorious.[6]

Second, the fact that the amount "belonging" to members of the plaintiff Class cannot be determined until after the attorneys are paid either fails to distinguish this case from any other or begs the question that Class counsel purport to be asking. No victorious plaintiff can ever know how much the judgment or award will actually swell his or her bank account until the bill from his or her attorney is known. That is true of individual as well as class actions, or whether or not a plaintiff is irrevocably obligated to pay his or her attorney, or whether or not the attorney is operating on a contingency fee basis, or whether the fees are paid from defendants to plaintiffs or directly to the attorneys out of a common fund. If, on the other hand, Class counsel are using the term "belonging" as a term of art that conveys the idea that the funds do not belong in a taxable sense to the Class members, they are merely stating an ipse dixit conclusion.

On the other hand, LOF's focus on the union as an entity is not really convincing either. In particular, back pay awards resulting from union litigation are taxed to the union members as income and, because the union is merely acting as the agent of its members, such an award results in no income to the union itself. LOF fails to explain why the other reasons behind the union's bringing of the action outweigh its purpose to act as its members' agent and to obtain a benefit for them—so much so as to shift the entire tax burden away from the primary beneficiaries. In addition, the Class has some attributes of an entity in common with the union (not the least of which is its obvious ability to sue and be sued), and this Court is not convinced that the Class should not obtain the same tax treatment as a union, at least where the primary purpose of each is to pursue litigation as the agent of its members.

Rather than torturing the meaning of the Ruling by stretching the limits of credible analogy, however, this Court prefers to look at its conceptual underpinning. In the situation of the individual plaintiff, the imputation of income to that plaintiff for his or her attorneys' fees stems from the seminal notion that a taxpayer realizes income from a third party's payment of his or her obligation. And that obligation in Situation 1 stems either from the express contract of employment between attorney and client or, absent such express contract, from the undertaking to pay fees viewed as implicit in the client's having hired the lawyer.[7] As will be seen, that explanation of the one-on-one hiring result treated in Situation 1 contrasts with the quite different relationship between a class and its class counsel.

But first a word should be said about this Court's role in the current dispute. LOF and the Class have not asked for a final determination of the effect that the attorneys' fee award will have on the Class members. Any such determination would be merely advisory (and thus problematic in Article III "case or controversy" terms) because IRS, an indispensable party to any tax dispute, could not be bound by a decree in which it had no part as a party litigant. Nevertheless, with respect to the funds created pursuant to the court-approved Settlement Agreement here, this Court has a

---

6. It is well established that a taxpayer must include in income the portion of an award stemming from a victorious suit that is paid directly to taxpayer's lawyer pursuant to a contingency fee arrangement (see, e.g., *O'Brien v. Commissioner*, 38 T.C. 707 (1962), *aff'd on the opinion below*, 319 F.2d 532 (3d Cir.1963) (per curiam)). Pro bono representation may present a more difficult case, and this Court has been unable to find any cases discussing the tax effect to a plaintiff of an award of fees to his or her pro bono attorney.

7. Pursuing this line of analysis in essence fleshes out plaintiffs' "belonging" argument by making explicit the connection implicit in plaintiffs' argument between "belonging" and the concept of taxable income.

704

fiduciary role (see *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988)). To preserve the funds for their intended beneficiaries, this Court has an obligation to exercise its judgment to maximize the benefits flowing from those funds within the confines of the Settlement Agreement and the law.[8]

As Class counsel point out, Section 6724(a) provides:

No penalty shall be imposed under this part with respect to any failure [to report income] if it is shown that such failure is due to reasonable cause and not willful neglect.

That section sets forth the limits on how "aggressive" a taxpayer or employer may be in deciding when he must file returns with the IRS. In its role of supervising the administration of the fund, this Court of course occupies a different role vis-a-vis Section 6724(a) than a private employer or taxpayer. But where as here there is no real enlightenment at all furnished by the reported authorities,[9] this Court views it as appropriate to order LOF to refrain from filing the informational returns because there is substantially more than "reasonable cause" to believe no such returns were or are necessary.

This Court has so found because it has determined that the attorneys' fee payment here should not be labeled as income to the individual Class members even under the broad definition of Section 61(a), which cov-

ers "all income from whatever source derived." That conclusion follows logically from a close analysis of the nature of the funds created by the Settlement Agreement.

To be sure, LOF argues that the awarded attorneys' fees belonged to the Class members because Title VII's fee shifting provision, Section 2000e–5(k),[10] allows the award of fees *to plaintiffs* as prevailing parties, not to plaintiffs' attorneys. As LOF rightly points out, that provision has been held not to confer any rights on attorneys independent of the client's right to reimbursement. Thus *Soliman v. Ebasco Services Inc.*, 822 F.2d 320, 322 (2d Cir. 1987) (citations omitted) said:

The Supreme Court has held that the words "prevailing party" found in § 1988 of the Civil Rights Act refer to plaintiff's entitlement to those fees, not the plaintiff's lawyer.... We see no reason not to apply this interpretation to 42 U.S.C. § 2000–e5(k). *See Moore v. National Ass'n of Securities Dealers, Inc.*, 762 F.2d 1093, 1099 n. 10 (D.C.Cir.1985). ("The goal of the [Title VII provision for attorney's fees] is to encourage plaintiffs to bring meritorious suits by providing *them* a source of funds for retaining competent counsel.") (emphasis in original). Whether those attorney's fees that are awarded ultimately end up in the lawyer's or the client's hands depends, of

8. This Court shares LOF's concerns (D.Mem. 4 n. 1 (emphasis in original)):

LOF sympathizes [sic] with the plaintiffs and does not wish to take any action that would *unnecessarily* increase their tax burdens. Nonetheless, LOF's sentiments, however justified, and whether or not shared by this court, provide no basis for flouting the tax laws and the reporting obligations they impose on LOF in this case.

This Court's disagreement with LOF, however, stems from its belief that such additional tax burdens are not *necessary*, not from a belief that this Court may flout the tax laws any more than LOF can. It remains as true today as it was over a half-century ago in Judge Learned Hand's classic statement in *Helvering v. Gregory*, 69 F.2d 809 (2d Cir.1934) that:

Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best

pay the Treasury; there is not even a patriotic duty to increase one's taxes.

9. That total absence of direct authority is in a sense astonishing, given the thousands of comparable situations in which judicially-approved fee awards have been made to class counsel. It may simply be that most payors in LOF's position have either perceived the issue differently from LOF, or perhaps have not troubled to confer with their tax advisers, or perhaps are simply more complaisant. It is surely difficult to draw any justifiable inference either way as to the correct result from the mere fact that there is no reported authority on the issue.

10. That Section reads:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorneys' fee as part of the costs.

course, on the private fee arrangements entered into between them when representation is undertaken.

But this is not the typical individual Title VII case, in which the court calculates a reasonable attorneys' fee and orders the defendant to pay that amount to the plaintiff, who may or may not pass all or part of it along to his or her attorney. In fact, the nature of the award in this case is no different from the award in class actions that have nothing corresponding to Title VII's fee-shifting provision at all—actions such as stockholders' derivative suits, stockholders' class claims, and the host of imaginative class claims entirely outside of the employment field that have been filling the lawbooks for many years. In such class actions the award to the class' attorneys—hired as in this case by a single class representative (or perhaps by a few representatives)—is really grounded on the equitable doctrine of the common fund. And an analysis of the usual role of the Section 2000e–5(k) award in the *class action* context—or at a minimum the role of that award in *this* case—confirms the parallel to that equitable doctrine.

While the traditional "American Rule" as to attorneys' fees has always been that each party bears his or her own fees regardless of the outcome of the litigation, fee-shifting statutes such as that in Title VII are not the only exceptions to that Rule. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 257–58, 95 S.Ct. 1612, 1621–22, 44 L.Ed.2d 141 (1975) makes clear that such statutes do not supersede the historic doctrine according to which, when a case results in the creation of a common fund for the benefit of a plaintiff class, a court has the equitable power to award the payment out of the fund of a reasonable fee for the services rendered by the attorneys for the plaintiff class.[11] Unlike the Title VII fee-shifting statute, with its added award to the plaintiff employee to assure that his or her back pay award remains intact, that equitable doctrine creates rights in attorneys and not in their

clients alone, and it enables the attorneys to sue directly to collect fees. In addition, *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 125–27, 5 S.Ct. 387, 391–92, 28 L.Ed. 915 (1885) long ago held that the identical right extends even to attorneys who have been paid a negotiated fee by one party but whose efforts enriched other, passive members of the class.

Indeed, it is specifically recognized in the class action context that the class lawyers, lacking a one-to-one relationship with the class members who are most often unknown to them or are even (as here) as yet unascertained, are really in an arm's length adversarial position with the class members when it comes to dividing up the pot—to carving out a fee award. As our Court of Appeals put it in *Skelton,* 860 F.2d at 253 (quoting Report of the Third Circuit Task Force, *Court Awarded Attorney Fees* 20 (Oct. 8, 1985)), when the defendant deposits an agreed-upon amount into a fund in exchange for a release of all liability to the class members, the attorneys whose services built up the fund see their "role change[ ] from one of a fiduciary for the clients to that of a claimant against the fund created for the clients' benefit." This Court, like many others, has frequently appointed independent counsel to represent the class *as an entity* to help in making sure that the class gets fair treatment when its own counsel moves to the opposite side of the bargaining table.

It is true that *Skelton, id.* at 252–54 contrasted the situation of the fee-shifting statute with that of the lawyer-client division of a common fund for the purpose that the court was considering there: whether the same standards should apply to the two situations in quantifying the fee award (more specifically, whether risk multipliers should be assessed against the losing defendants). But when what is at issue is the question now before this Court, the parallel between the two situations is far more powerful than the distinction between them discussed in *Skelton.* And in that respect it should always be remembered that in

---

11. That ancient doctrine rooted in the Court of Chancery was confirmed for the federal courts over a century ago in *Trustees v. Greenough,* 105 U.S. (15 Otto) 527, 535–36, 26 L.Ed. 1157 (1882).

class litigation the class—once certified—acquires an independent existence and legal status of its own, wholly apart from that of its individual members (see, e.g., *United States Parole Commission v. Geraghty,* 445 U.S. 388, 397–98, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) and cases cited there, particularly the seminal opinion in *Sosna v. Iowa,* 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975)).

Look at what happened in this case. On September 24, 1987 the parties entered into a Settlement Agreement that provided (Art. VII, ¶ 3):

> Defendants shall pay such reasonable attorneys' fees to Plaintiff Eirhart as the Court shall direct or as they shall agree, subject to Court approval.

That provision is itself significant: It necessarily had to be framed in those terms because the specific Class members (let alone their ratable shares of any back pay and other awards) were then not known—and surely LOF does not assert that the sole plaintiff and class representative Sherry Eirhart (to whom the right to attorneys' fees literally ran under the Settlement Agreement, as it necessarily had to) was required to report as taxable income the entire $1.850 million ultimately agreed upon as the Class attorneys' fees. No, what was at work here, just as in the common fund cases, was the contemplation of an award to and for the benefit of *Class counsel.*

On October 2, 1987 this Court granted its preliminary approval to the parties' Settlement Agreement. Then in December of that year Eirhart and Class counsel petitioned for an award (under Section 2000e–5(k), of course, though that makes no difference) of interim attorneys' fees as well as reimbursement of costs and expenses, to be awarded on this Court's final approval of the settlement (then set for hearing March 15, 1988). Shortly after that the parties entered into negotiations on the subject, which culminated in their March 11, 1988 agreement for payment of $1.850 million in full and final settlement of fees and expenses to be incurred not only on an interim basis but through "final judicial approval" (as defined in the Settlement Agreement). This Court approved that agreement March 15, 1988. And it should again be emphasized that at that time both the identity of the individual Class members and the quantification of their claims remained unknown.

Under all these circumstances that award, separately deposited for the benefit of the lawyers, must be perceived as *theirs*—not as taxable to the later-ascertained individual Class members.[12] It would not only exalt form over substance, but would actually exalt fiction over both form and substance, for LOF's position to be accepted on such a retrospective basis for the 1988 payment made to Class counsel.[13]

## Conclusion

This Court finds far more than "reasonable cause" to believe that the payment made to the Class attorneys under the circumstances in this case should not be considered income to the Class members. In-

---

12. Of course the Class members received a benefit from the efforts of the attorneys, or else the attorneys would have had no equitable right to payment out of the fund (remember that in terms the award, both under Section 2000e–5(k) and under the parties' settlement, technically ran to Eirhart as surrogate for the Class). But that benefit would have been received regardless of any payment to the attorneys. Neither party has suggested that such benefit is itself grounds for imputing income to members of the Class on the post hoc basis urged here by LOF. If IRS chooses to make that argument it may do so, but this Court finds such a basis for tax liability too attenuated to justify its ordering the submission of informational returns by LOF.

13. LOF's contention is particularly problematic in the situation here (not a unique one), where the event ordinarily triggering the *realization* of income (payment and receipt of the money) is so far removed in time from the last event necessary to trigger the *recognition* of income by each Class member (ascertainment of her status as such Class member and the quantification of her share of the fund paid by LOF). And that notion is rendered even more bizarre by the fact that the putative taxable amount had not simply been deposited in an account to abide the event that triggered recognition, but had long since been in the hands of counsel, freely available for their own use (not only constructive but actual receipt of the money).

stead the non-taxability to the Class members of that portion of LOF's payment appears the clearly better view. Accordingly LOF is ordered not to send informational returns to the IRS in which it reports that attorneys' fee payment as income to the individual Class members. In light of this result, this Court need not address Class counsel's assertion that any such informational returns would subject the Class or LOF (or both) to liability for late filing.[14]

**14.** That consideration would of course appear to link up with the matters adverted to in n. 13.