993 F.2d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
William F. DALTON, individually and as a representative of a
bondholder class, Plaintiff,
v.
JONES, BIRD & HOWELL; Peter Wright; Glen A. Lewis, et al.,
Defendants/Appellants,
Appeal of STOTSENBURG & STOTSENBURG; Sandberg, Phoenix and
Van Gontard; and Kemper & Watts.
 No. 91-3730.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 14, 1993.*
Decided May 13, 1993.
 
 Before CUMMINGS, CUDAHY, and MANION, Circuit Judges.
 
 ORDER
 
 1
 Appellants, three of the law firms that represented the plaintiff class in a securities fraud suit, appeal from the district court's decision concerning expenses and attorneys' fees. The district court correctly concluded that appellants are not entitled to trial expenses and prejudgment interest on expenses and therefore we affirm as to these matters; however, because appellants are entitled to post-judgment interest on their attorneys' fees, we vacate the district court's judgment and remand for proceedings consistent with this order.
 
 I. BACKGROUND
 
 2
 In June of 1987 the district court certified, pursuant to Federal Rule of Civil Procedure 23, that this case could proceed as a class action. The court authorized the firms of R. Alan Stotsenburg, P.C., Sheperd, Sandberg & Phoenix, P.C., and Gray & Ritter to act as general counsel to the class.[1]
 
 
 3
 The complaint alleged claims of federal and state securities fraud, violations of the federal RICO statute, and common-law negligence, breach of contract, and breach of trust in connection with the original issuance and sale to the public of $9,375,000 in principal amount of industrial revenue bonds. In the spring of 1990 the plaintiff class reached settlement agreements with five of the defendants. A settlement fund totalling $2,625,000 was created for the benefit of the class and was held at interest by an escrow agent. The only claims remaining for trial were common-law claims of negligence against the accountant and bond counsel and breach of contract against bond counsel. Trial began in June of 1990 and ended when, after the plaintiff rested, the district court granted the defendants' motion for a directed verdict.
 
 
 4
 Class counsel submitted an application for an award of attorneys' fees and expenses to be paid out of the settlement fund. The court ultimately awarded a total of $739,680.83 in attorneys' fees and $254,380.23 in expenses to class counsel, as well as interest earned on the expense award from August 2, 1991, the date of the award, to November 1, 1991, the date on which the settlement fund was distributed to the class members. The court denied fees and expenses incurred at trial and pre-award interest on expenses. The court also denied interest on fees accumulated from August 2, 1991, to November 1, 1991.
 
 
 5
 Appellants contend that the district court erred in denying (1) reimbursement of expenses incurred in taking the case to trial; (2) interest on the expenses of class counsel accruing from the end of the respective calendar quarters in which the expenses were incurred until the date of the award (periods ranging from seven years down to sixteen months); and (3) interest on the attorneys' fees actually awarded by the court accruing from the date on which the settlement fund was created until the date of the award (a period of sixteen months).
 
 II. DISCUSSION
 
 6
 Under the American Rule all parties are to bear their own costs in litigation. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 (1975). A well-established exception to the American Rule is the common-fund case, which "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Attorneys in a class action in which a common fund is created are entitled to compensation for their services and reimbursement of their out-of-pocket expenses, but the amount is subject to court approval. Id.; Skelton v. General Motors Corp., 860 F.2d 250, 253 (7th Cir.1988), cert. denied, 493 U.S. 810 (1989); see also In re Fine Paper Antitrust Litig., 751 F.2d 562, 583 (3d Cir.1984) (fee requests from common fund are subject to heightened judicial scrutiny). In a common-fund case the defendant deposits a specified amount of money with the court for the benefit of the class in exchange for release of its liability. The district court serves as a fiduciary for the fund's beneficiaries and exercises its equitable power to award class counsel expenses and attorneys' fees out of the fund. See Alyeska, 421 U.S. at 257-58. The court must balance the competing goals of fairly compensating the attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund. Skelton, 860 F.2d at 258. Because a district court is far better suited than an appellate court to make this assessment, we will not disturb the district court's award of expenses and attorneys' fees unless it clearly appears that the court abused its discretion. Harman v. Lyphomed, Inc., 945 F.2d 969, 973 (7th Cir.1991); Skelton, 860 F.2d at 257; Swanson v. American Consumer Indus., Inc., 517 F.2d 555, 562 (7th Cir.1975). Nevertheless, this standard of review allows us to closely scrutinize the questions of law decided by the district court in reaching the award. See Skelton, 860 F.2d at 257.
 
 A. Trial Expenses
 
 7
 As noted above, class counsel proceeded to trial on the common-law negligence claims against the accountants and bond counsel, primarily on the causation issue. The plaintiff representing the class had to show that the defendants' negligent misrepresentations proximately caused him to purchase the bonds; in other words, that the plaintiff relied on the defendants' negligent misrepresentations. The plaintiff had not directly relied on the defendants' negligent misrepresentations, so he attempted to show indirect reliance through a theory of "negligence on the market." That is, the plaintiff purported to show that had the defendants not made negligent misrepresentations, the bonds would not have been marketed and the plaintiff would not have purchased them and suffered financial loss. This theory proved unavailing. At the close of the plaintiff's evidence the district court directed a verdict in favor of the defendants, ruling that the plaintiff had presented insufficient evidence that the defendants' negligent misrepresentations were the proximate cause of the injury suffered by the class.
 
 
 8
 The district court denied class counsel's request for reimbursement of out-of-pocket trial expenses because the bulk of the settlements were achieved prior to trial and the claims that were tried did not result in any benefit to the class.[2] Appellants contend that in so ruling the district court abused its discretion. A district court can abuse its discretion when it overlooks essential evidence or fails to consider relevant factors. Jardien v. Winston Network, Inc., 888 F.2d 1151, 1159 (7th Cir.1989); Kasper v. Board of Election Comm'rs, 814 F.2d 332, 339 (7th Cir.1987). Appellants argue that, in assessing whether class counsel were entitled to trial expenses, the district court neglected to consider the relevance of its pretrial rulings on proximate causation. In November of 1985 the court denied the accountant's motion to dismiss the plaintiff's claim based on the Securities and Exchange Act of 1934 and Rule 10b-5, ruling that the plaintiff could show reliance on the accountant's representations by establishing fraud on the market. See Shores v. Sklar, 647 F.2d 462 (5th Cir.1981). In July of 1987 the district court denied the accountant's motion for summary judgment on the common-law negligence claim, concluding that there was a material issue of fact whether the plaintiff had relied on the accountant's representations, and that this issue would be resolved by the jury. In June of 1990, six days before trial began on the negligence claims, the court granted the defendants summary judgment on the Rule 10b-5 claims, but denied summary judgment on the negligence claim, stating that it would be improper to grant summary judgment without allowing the plaintiff an opportunity to expound on his theory of proximate causation. Appellants maintain that these pretrial rulings led them to believe that going to trial would benefit the class and therefore they are entitled to trial expenses. We disagree.
 
 
 9
 Class counsel are entitled to reimbursement only for those expenses incurred in the course of work that actually benefitted the class. See Van Gemert, 444 U.S. at 479; In re Agent Orange Product Liability Litig., 818 F.2d 226, 238 (2d Cir.1987). Thus, appellants are entitled to reimbursement for those expenses incurred in the creation or preservation of the common fund. See Union Central Life Ins. Co. v. Hamilton, 493 F.2d 76, 79 (7th Cir.1974); Herbert B. Newberg, Attorney Fee Awards § 2.19, at 69 (1986). The trial neither created nor preserved the common fund. The fund was created entirely by the settlements that were achieved before trial. Appellants were reimbursed $254,380.23 for the expenses they incurred in forging those settlements. The trial was aimed at increasing the common fund, not preserving it. Appellants were compensated for their services involved with preserving the common fund. The district court added to the lodestar calculation the time expended by appellants in administering the common fund and preparing for fairness hearings for approval of the settlements.
 
 
 10
 Nevertheless, as appellants correctly assert, the benefit to the class need not be pecuniary in order to justify the reimbursement of litigation expenses. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 395-96 (1970). Class counsel are entitled to reimbursement of litigation expenses if the litigation has accomplished a result that corrects or prevents an abuse that would be prejudicial to the rights and interests of a class or affect the enjoyment or protection of an essential right. Id. (quoting Bosch v. Meeker Coop. Light & Power Ass'n, 101 N.W. 423, 425-27 (Minn.1960)). Appellants contend that they are entitled to trial expenses because taking the negligence claims to trial benefitted the class and the securities market by supplementing the Securities and Exchange Commission's enforcement capabilities. See J.I. Case Co. v. Borak, 377 U.S. 426, 432 (1964). We disagree. Bringing the suit on behalf of the class in the first instance might have benefitted individual investors by protecting their collective interest in the integrity of the market. But pursuing the negligence claims at trial did not produce the same benefit, for the plaintiff did not prevail. Any nonmonetary benefit that was conferred on the class or the market by this litigation was produced before trial.
 
 
 11
 Appellants' contention that they are entitled to trial expenses because the district court's pretrial rulings induced them into believing that going to trial on the negligence claims would benefit the class is without merit. As is clear from the discussion above, mere belief that services will benefit a class is not sufficient to support an award of expenses. Actual benefit is required. See Van Gemert, 444 U.S. at 479; In re Agent Orange Product Liability Litig., 818 F.2d at 238. Moreover, appellants' argument that the district court's rulings suggest that the plaintiff would establish proximate causation at trial is without merit.
 
 
 12
 Appellants should not have believed that because the plaintiff's common-law negligence claim survived a motion for summary judgment in November of 1987, it would survive a motion for directed verdict in June of 1990. In its motion for summary judgment in 1987 the accountant argued that because the plaintiff had not directly relied on the accountant's statements, he could not establish that the accountant's statements proximately caused his injury. In denying the motion the court ruled that the plaintiff could establish proximate causation by using a "negligence on the market" theory. But it was clear from the court's 1985 denial of the accountant's motion to dismiss that to succeed under this theory the plaintiff would have to show that the bonds were unmarketable at any price. The accountant's motion for summary judgment in 1990 challenged the plaintiff's ability to make this showing. In granting the motion on the Rule 10b-5 claim the court ruled that, based on the evidence before it, the plaintiff would be unable to establish that the bonds were completely unmarketable. The court denied the motion with respect to the common-law negligence claim, however, because there was a possibility that the plaintiff could establish proximate causation without relying on the "negligence on the market" theory. Following this ruling it should have been clear to appellants that the court would not allow them to present evidence of the unmarketability of the bonds at trial, for this evidence was relevant only to the failed "negligence on the market" theory. Thus the district court's exclusion of the plaintiff's proposed unmarketability evidence on the eve of trial should not have taken appellants by surprise. Taken as a whole, the district court's pretrial rulings on the proximate causation issue should not have led Appellants to believe that the plaintiff would be able to establish proximate causation at trial. Rather, the rulings suggest that the plaintiff's theory of indirect reliance on the accountant's representation concerning the bond issue would fail.
 
 
 13
 Because taking the common-law negligence claims to trial did not benefit the class and we find no merit in appellants' contention that they are entitled to trial expenses because they believed that going to trial would benefit the class, we find no abuse of discretion in the district court's conclusion that appellants are not entitled to reimbursement for the out-of-pocket expenses that they incurred at trial.
 
 
 14
 B. Prejudgment Interest on Litigation Expenses
 
 
 15
 Appellants contend that the district court abused its discretion in refusing to award prejudgment interest on class counsel's out-of-pocket expenses. Prejudgment interest is a form of compensation and the decision to award prejudgment interest rests in the sound discretion of the district court. In re Continental Illinois Sec. Litig., 962 F.2d 566, 571 (7th Cir.1992); Michaels v. Michaels, 767 F.2d 1185, 1204 (7th Cir.1985). A district court abuses its discretion when it bases a fee award on findings that are clearly erroneous. Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 776 F.2d 646, 655 (7th Cir.1985). Appellants maintain that the district court abused its discretion by basing its decision not to award prejudgment interest on a clearly erroneous finding that the expenses of litigation were part of class counsel's "overhead." Appellants are wrong. The district court found that the prejudgment interest on the expenses of litigation was absorbed in class counsel's "overhead," not that the expenses themselves were "overhead."[3]
 
 
 16
 Moreover, appellants cite no case law supporting their position that they are entitled to recoup prejudgment interest on the expenses of litigation and our research has uncovered no such cases. Even if, as appellants argue, class counsel's payment of litigation expenses may be characterized as a loan to the class (a proposition that may be questioned, see Rand v. Monsanto Co., 926 F.2d 596, 600-01 (7th Cir.1991)) the loan may be interest-free. Appellants were willing to "loan" their limited funds to support this litigation, having calculated that they could receive the best return on these funds by investing them in this litigation and not elsewhere. The expected return on the investment was to be recovered as attorneys' fees. A risk of making the investment was loss of all the funds that were loaned to the class. A cost of making the investment was the time value of the funds. Had appellants not been willing to loan the class the funds necessary to cover the expenses of this litigation, presumably other law firms would have been willing to do so. Therefore appellants had to be willing to give up the time value of their money in exchange for the opportunity to reap significant benefits by way of attorneys' fees. That the benefits were not what appellants expected does not mean that appellants can recover a cost of taking on the class as a client. The district court's treatment of the litigation expenses as an interest-free loan to the class is not clearly erroneous and therefore the court did not abuse its discretion in refusing to award prejudgment interest.
 
 
 17
 C. Post-judgment Interest on Attorneys' Fees
 
 
 18
 The district court awarded class counsel post-judgment interest on expenses pursuant to 28 U.S.C. § 1961(a).[4] Nevertheless, the court did not award post-judgment interest on the attorneys' fees. The award of attorneys' fees, like the award of expenses, is subject to § 1961(a). See Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1423 (10th Cir.1990); Institutionalized Juveniles v. Secretary of Pub. Welfare, 758 F.2d 897, 927 (3d Cir.1985); Harris v. Chicago Great Western Ry. Co., 197 F.2d 829, 836 (7th Cir.1952). The district court must award interest on attorneys' fees once it has entered a judgment awarding the fees. See Transpower Constructors, 905 F.2d at 1423.
 
 
 19
 The district court entered a judgment on August 2, 1991, awarding class counsel attorneys' fees and expenses, but denying post-judgment interest on the fees and expenses. Class counsel moved for reconsideration of the award and on October 24, 1991, the court awarded post-judgment interest on expenses from August 2, 1991, until November 2, 1991, the date on which the escrow agent distributed the award. Appellants contend that they are entitled to post-judgment interest on their attorneys' fees for the same period of time. We agree.
 
 
 20
 The commencement date for the running of interest on fee judgments starts when the fee award is initially issued, although appeals may subsequently follow from that order. See Jenkins ex rel. Agyei v. Missouri, 931 F.2d 1273 (8th Cir.), cert. denied, 112 S.Ct. 338 (1991); Institutionalized Juveniles, 758 F.2d at 927; City of Detroit v. Grinnell Corp., 575 F.2d 1009, 1010 (2d Cir.1987). In this case the district court determined in its August 2 order that appellants were entitled to attorneys' fees and expenses. Therefore appellants are entitled to the interest that began to accrue on that date. Neither the district court's order of October 21 resolving the motion for reconsideration nor the filing of this appeal affected the date on which the post-judgment interest began to accrue.
 
 
 21
 This court's decision in Harris v. Chicago Great Western Railway Co., 197 F.2d 829 (7th Cir.1952), does not require us to conclude that the judgment awarding attorneys' fees is not considered entered for purposes of § 1961 until this appeal is resolved. In Harris the district court had awarded what it believed to be reasonable attorneys' fees. This court concluded that the amount awarded by the district court was unreasonable. Id. at 836. Because neither the amount due for fees nor the due date was defined until the decision on appeal, this court ruled that interest would begin to accrue only after the district court entered a new award of fees in conformance with this court's mandate. Id. On the other hand, interest began accruing on the expenses that had been awarded by the district court, for that portion of the award was not disturbed on appeal. Id. In this case the actual award of attorneys' fees has not been disturbed on appeal. Only the amount of interest that appellants are entitled to receive has been altered. Therefore, on remand the district court should allow post-judgment interest from the date of its original judgment allowing the award, i.e., August 2, 1991.
 
 III. CONCLUSION
 
 22
 The district court's judgment denying reimbursement of trial expenses and interest on prejudgment litigation expenses is AFFIRMED IN PART and VACATED IN PART. We REMAND to the district court with instructions to award interest on attorneys' fees that accrued from August 2, 1991, to November 1, 1991.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 This suit was originally filed in the United States District Court for the District of Hawaii. Kemper & Watts, one of the appellants in this case, was local counsel to the plaintiff class until the suit was transferred to the Southern District of Illinois. R. Alan Stotsenburg, lead counsel to the plaintiff class, died on February 19, 1989. His firm was succeeded in the action on May 3, 1989, by the firm of Stotsenburg & Stotsenburg
 
 
 [2]
 The district court also denied attorneys' fees for services at trial, but appellants do not challenge that ruling
 
 
 [3]
 In its order denying class counsel's request for prejudgment interest on expenses the court stated: "The time value of funds used to advance the cost and expenses of litigation is an item normally absorbed in firm overhead." In an amended order the court reaffirmed its position, stating that "interest on funds advanced [for the litigation] is a cost borne by the attorney, and is therefore overhead." We do not understand the district court's use of the term "overhead" to mean that the court considered the prejudgment interest on litigation expenses to be a business expense such as rent, insurance, and utilities, that cannot be allocated to a particular client. The prejudgment interest that accrues on funds advanced for litigation could certainly be allocated or assigned to the client on whose behalf the funds were advanced. Rather, the district court considered the time value of the funds advanced for the litigation as an expense that is incurred in representing a particular client for a contingent fee--an expense that the law firm hopes to recoup (but might not recoup) in attorneys' fees
 
 
 [4]
 Section 1961(a) provides:
 Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment
 * * *